1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT FOR THE

7                         EASTERN DISTRICT OF CALIFORNIA

8

9   NATIONAL ASSOCIATION OF          )    No. CV-F-06-841 OWW/DLB
    BUSINESS REPRESENTATIVES,        )    (Consolidated with No. CV-F-
10  et al.,                          )    06-1492 OWW/DLB)
                                     )
11                                   )    MEMORANDUM DECISION GRANTING
                                     )    NATIONAL ASSOCIATION OF
12                 Plaintiffs,       )    BUSINESS REPRESENTATIVES'
                                     )    MOTION FOR SUMMARY JUDGMENT
13            vs.                    )    (Doc. 24) AND DENYING
                                     )    TEAMSTERS LOCAL UNION #
14                                   )    948'S MOTION FOR SUMMARY
    TEAMSTERS LOCAL UNION # 948,     )    JUDGMENT (Doc. 20)
15                                   )
                                     )
16                 Defendant.        )
                                     )
17  _____ )

18

19       National Association of Business Representatives (NABR), Jim

20  Hicks, Genevieve Fidalgo, Javier Garcia, Lupe Juarez, Ralph

21  Ramirez, and Jack Smith (Grievants) have filed a First Amended

22  Complaint to Compel Arbitration for Breach of Contract and For

23  Violation of Labor Management Reporting and Disclosure Act

24  (LMRDA) against Teamsters Local Union # 948.[1]  Teamsters Local

25  _____

26       [1]The claim for violation of the LMRDA has been dismissed by
    stipulation of the parties.

                                    1

Union # 948 (Local 948) have filed a Complaint for Declaratory

Relief and Injunction against NABR.

The parties' dispute centers around the enforceability of

Section XIII, Step 3 of the 2002-2206 CBA, entitled "Adjustment

of Grievances".  The CBA provides for a three step grievance

procedure to resolve "[A]ll disputes of any kind involving the

interpretation or application of the terms of this Agreement

...."  At Step 3, if a grievance has not been settled through the

prior Steps, the parties agreed in the CBA as follows:

> STEP 3
>
> If a grievance is referred to Step 3, the two
> parties shall request a State Mediator
> mutually agreeable to both parties to hear
> the grievance.  The decision of the State
> Mediator shall be final and binding on the
> Employee and both parties.  Any expenses
> incurred by the State Mediator shall be split
> by both parties except that each party shall
> bear the expense of preparing and presenting
> its own case.

The parties agree that the reference to "State Mediator" is a

typographical error and that the reference should be "Federal

Mediator."

The parties respectively move for summary judgment.

A.  <u>GOVERNING STANDARDS</u>.

Summary judgment is proper when it is shown that there

exists "no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an

element of a claim or a defense, the existence of which may

2

affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Materiality is determined by the substantive law governing a claim or a defense. *Id.* The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party. *Id.*

The initial burden in a motion for summary judgment is on the moving party. The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to defeat summary judgment. *T.W. Elec.*, 809 F.2d at 630. The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial." *Id.* The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint." *Id.* The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995). This requires more than the "mere existence of a scintilla of evidence in support of the

3

plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff." *Id.*  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment." *Id.*  As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-1103 (9th Cir.2000):

> The vocabulary used for discussing summary judgments is somewhat abstract.  Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant.  Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant.  Finally, we distinguish among the initial burden of production and two kinds of ultimate burdens of persuasion: The initial burden of production refers to the burden of producing evidence, or showing the absence of evidence, on the motion for summary judgment; the ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial.

> A moving party without the ultimate burden of persuasion at trial - usually, but not always, a defendant - has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment ... In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial ... In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact ....

4

> If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial ... In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything ... If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense ... If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment ... But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion.

**B.   RESPECTIVE STATEMENTS OF UNDISPUTED FACTS.**

    **1.   NABR'S STATEMENT OF UNDISPUTED FACTS.**

In moving for summary judgment, NABR sets forth the following facts as undisputed.

Local 948 does not dispute any of these facts, merely arguing that several of them are irrelevant to the resolution of NABR's motion for summary judgment.  Local 948's objections on relevancy grounds are not well-taken because the undisputed facts set forth below evidence the parties' backgrounds and course of dealing

**UMF 1**:  On February 5, 1997, the business agents for Teamsters Local 748 (one of three Teamsters locals which later merged into Local 948 in 2004) filed a petition with the National Labor Relations Board (NLRB) to organize NABR as their collective bargaining representative.  On March 12, 1997, NABR was certified by the NLRB as representative for part time, seasonal and full

time business agents, excluding those serving on the Local 748
Executive Board.

**UMF 2**: In 1997, NABR filed charges with the NLRB against
Local 748 for failure to enter into contract negotiations. In
NLRB Case No. 32-CA-166447, NLRB found that Local 748 had
bargained in bad faith by failing and refusing to provide NABR
with a comprehensive counter-proposal on wages, pensions, and
other terms and conditions of employment of the bargaining unit
employees. Local 748 complied with the NLRB determination after
a complaint was issued. The parties entered into a one year CBA
which expired on June 30, 1999.

**UMF 3**: The second CBA was in effect from June 11, 1999 to
June 30, 2002. Sam Martinez, former president of Teamsters Local
748 and current secretary treasurer of Defendant Teamsters Local
948, participated in negotiations on behalf of Local 748 and
signed the contract.

**UMF 4**: On July 8, 2004, the General Executive Board of the
International Brotherhood of Teamsters (IBT) approved the merger
of Teamsters Local 746, 748 and 94 into a single Local Union to
be known as Teamsters Local 948. The employees of Locals 746 and
748 voted overwhelmingly to merge with Local 94 to create the
newly formed Local 948. At the time, the NABR bargaining unit
was comprised of seven business agents. The new entity, Local
948, agreed orally to recognize NABR and honor the existing CBA
which it continued to do until the most recent slate of officers
took office in January 2006.

**UMF 5**:  There was a CBA in effect between NABR and Local 748 at the time of the 2004 merger of the three Locals into Teamsters Local 948.  In 2002, Sharon Mosley, currently principal officer for NABR, was the chief negotiator for NABR in negotiations for the new CBA.  The parties successfully negotiated a new CBA with a term of June 30, 2002 to June 30, 2006 (adopted October 8, 2002).

**UMF 6**:  The 2002-2206 CBA contains provisions in Section XIII, page 2, entitled "Adjustment of Grievances", for a three step grievance procedure to resolve "[A]ll disputes of any kind involving the interpretation or application of the terms of this Agreement ...."  At Step 3, if a grievance has not been settled through the prior Steps, the parties agreed in the CBA as follows:

> STEP 3
>
> If a grievance is referred to Step 3, the two parties shall request a State Mediator mutually agreeable to both parties to hear the grievance.  The decision of the State Mediator shall be final and binding on the Employee and both parties.  Any expenses incurred by the State Mediator shall be split by both parties except that each party shall bear the expense of preparing and presenting its own case.

**UMF 7**:  Prior to the execution of the 2002-206 CBA the parties submitted a dispute over seniority under the prior contract to federal monitor Jerry Allen on March 20, 2002.  NABR and Local 748 agreed, prior to the hearing conducted by federal monitor Jerry Allen, to accept Allen's recommendation as final

and binding, consistent with the language later appearing in the CBA adopted October 8, 2002.  When the corrected and agreed upon seniority list was established by Jerry Allen and typed by Local 748 secretary Kathy Garcia, Ms. Garcia inadvertently typed "State" Mediator instead of "Federal" Mediator in the heading on the seniority list and after Jerry Allen's name.  No one, including Jerry Allen, noticed the error, and Allen signed the document.  The typographical error was not discovered until January 2006, when the current dispute arose of the firing of six business agents.

**UMF 8**: In negotiations aver the 2002-2006 CBA, proposals were exchanged between the parties regarding the grievance procedure in Step 3.

**UMF 9**: In NABR's initial proposal dated February 23, 220, under "Arbitration," the language referred to the use of a "State Mediator" or "Federal Mediation and Conciliation Service."

**UMF 10**: In Sharon Mosley's July 18, 2002 notes taken during negotiations, on page 4 there is a reference to State Mediator. In the margin, there is an indication that there was a tentative agreement on this language.

**UMF 11**: In Sharon Mosley's July 20, 2002 notes taken during negotiations, a correction was made from State Mediator to Federal Mediator, and also a change made from the word "decision" to "recommendation."  There is also a reference in the margin that there was a tentative agreement on this item.

**UMF 12**: In Sharon Mosley's September 9, 2002 notes taken

during negotiations, under Arbitration, the tentative agreement ("last & final") on the language provided for the two parties to request a "Federal Mediator" to hear the grievance and that the "recommendation of the Federal Mediator shall be final and binding on the Employee and both parties."

UMF 13: In Sharon Mosley's last and final notes taken during negotiations, dated October 8, 2002, there is no mention of the arbitration process as the parties had already reached agreement.

UMF 14: Local 948's final offer, entitled "Teamsters Last and Final Offer" dated October 22, 2002 under "grievances" (page 1), the Employer confirmed the prior tentative agreement arrived at on September 9, 2002 on the language stated above in subdivision (d) [sic].  Local 948's last and final offer stated: "[R]ecommendation by Federal Mediator will be final and binding." This last and final offer was used in the ratification meeting of October 22 by the members of NABR, who ratified the CBA on October 22, 2002.

UMF 15: During the contract term, Federal Mediator Jerry Allen was called upon to hear a dispute between Local 748 and NABR on March 12, 2003 concerning layoffs of two business agents out of seniority order.  The parties agreed to accept the recommendation of Federal Mediator Jerry Allen as final and binding consistent with the terms of the CBA dated October 8, 2002.

UMF 16: There are four CBA's in the canning and food processing industry that have language similar to Section XIII of

the NABR contract, allowing for a final and binding recommendation by a federal mediator upon prior agreement of the parties.  Those contracts are between Local 948 and Con Agra Cannery, Con Agra Distribution Warehouse, Con Agra Receiving Station, and Ball Can Company.

UMF 17: Sue Martinez, on behalf of Local 948, has proposed language for final and binding recommendations by a federal mediator in negotiations for a CBA with Riverside Silgan Container Can Company.

UMF 18: An election was held for officers of Local 948 in September 2005.  Sam Martinez, then a Line Mechanic for Ball Corporation, was elected secretary treasurer.  Martinez had served a three year term as elected president of the Union (then Local 748) beginning 1998.  The newly elected Executive Board, including Martinez, took office on January 1, 2006.  January 3, 2006 was the first workday following installation of new officers.

UMF 19: On January 3, 2006, Martinez discharged six Local 948 business agents without telling them why they were being fired.  Each of the discharged business agents asked Sharon Mosley, as principal officer of NABR, to file a grievance contesting their firings.

Local 948 does not dispute that six business agents were fired but disputes whether they were given reasons for their discharge.  Local 948 does not present evidence, contending that this fact is irrelevant to the resolution of this motion.

1    **UMF 20**: The NABR contract had a provision requiring "just

2    cause" for discipline or termination of employees, as it

3    incorporated the Master Contract between California Processors,

4    Inc. and Teamsters California State Council of Cannery and Food

5    Processing Unions, International Brotherhood of Teamsters Adopted

6    July 8, 2003.

7    **UMF 21**: On January 4, 2006, Sharon Mosley served Sam

8    Martinez with grievances on behalf of four of the individuals who

9    were discharged: Genevieve Fidalgo, Javier Garcia, Ralph Ramirez,

10   and Jack Smith.  On or about January 6, Mosley served Sam

11   Martinez with grievances on behalf of two others: Jim Hicks and

12   Lupe Juarez.

13   **UMF 22**: On January 26, 2006, Sharon Mosley filed a second

14   grievance on behalf of Genevieve Fidalgo over Local 948's failure

15   to pay her accrued vacation and sabbatical leave pay.

16   **UMF 23**: On January 17, 2006, Sharon Mosley informed Sam

17   Martinez that the CBA required written answers to the grievances

18   within three days of the next Executive Board meeting and that

19   the answers would be due to Mosley the following Friday.  On

20   Monday, January 20, 2006, Mosley asked Martinez if he had any

21   answers and he replied that he did not.  Mosley never received

22   answers to any of the grievances.

23   **UMF 24**: On Thursday, February 9, 2006, Sharon Mosley asked

24   Martinez if he had an answer to Genevieve Fidalgo's grievance

25   over unpaid vacation and sabbatical pay.  He said he did not.  On

26   February 21, 2006, Mosley asked Martinez if the Executive Board

had made a decision on the grievances.  He said they had not yet made a decision, and Mosley asked the schedule a hearing on the grievances.  Martinez never responded to Mosley's request.

UMF 25: On March 9, 2006, Sharon Mosley asked Martinez again about the grievances and stated that answers were long overdue. He said, "I do not want to bring those people back."  Mosley responded that Martinez needed just cause to terminate them, under the CBA.  On March 11, 2006, Mosley asked Martinez again when he would be ready to discuss the grievances and he said he would have an answer to Mosley soon.

UMF 26: On March 17, 2006, Sharon Mosley sent a certified letter to Martinez, explaining that the Executive Board was in violation of the grievance section of the CBA, and that the next step was to call a federal mediator to hear the case.  Martinez did not respond to this letter.

UMF 27: On March 22, 2006, Sharon Mosley submitted grievances stating that newly elected vice president Luis Diaz and Otis Hall were performing bargaining unit work in the Visalia area.  Local 948 never responded to those grievances.

UMF 28: Sharon Mosley received a letter dated March 26, 2007 [sic] from Local 948 attorney David Rosenfeld, indicating that Local 948 did not consider itself obligated to process the grievances over the discharges.  NABR retained counsel Sylvia Courtney.

UMF 29: On April 24, 2006 Sylvia Courtney responded to David Rosenfeld's letter, explaining the Union's position.  The parties

12

1  thereafter exchanged correspondence dated May 2, 2006; May 9,
2  2006; May 10, 2006; May 12, 2006; and June 5, 2006.  In the
3  interim, a meeting was held on May 19, 2006 in the offices of
4  Local 948, between Sharon Mosley on behalf of NABR, and Local
5  948, including secretary treasurer Martinez, with counsel
6  present.  The parties discussed the disputes over processing of
7  the grievances and did not reach agreement.  Local 948 continued
8  to take the position that federal mediators were not permitted to
9  issue final and binding decisions because they were not
10  arbitrators, and NABR continued to insist that Local 948 was
11  bound to comply with the grievance procedure which it had agreed
12  to in the CBA, and that the parties were entitled to (and had
13  agreed to) mutually select a federal mediator to hear their
14  disputes with a prior agreement that the federal mediator's
15  recommendation would be final and binding.

16      **UMF 30**: In the interim between filing the grievances over
17  the discharges of business agents in January 2006, Sharon Mosley
18  filed a number of additional grievances beginning on March 22,
19  2006 which were never answered by Local 948.  Those grievances
20  involved the hiring of new seasonal business agents, Sylvia
21  Lovato, Arturo Vigil, Alice Duran, Veronica Bustamonte, Don
22  Carney, Steve Vierra, Larry Lund and Myra Longoria instead of
23  recalling the six discharged business agents first.  Local 948
24  continued to refuse to process, and never did process, any of the
25  grievances in accordance with the grievance procedure.

26      **UMF 31**: On June 14, 2006, Sharon Mosley filed an unfair

labor practice charge against Local 948 alleging refusal to bargain for a new CBA.

UMF 32: NABR's complaint in this action was filed on July 10, 2006.

UMF 33: Local 948's complaint in this action was filed on July 10, 2006.

UMF 34: Three of the discharged business agents settled their claims against Local 948 prior to the filing of NABR's Motion for Summary Judgment (Jack Smith, Jim Hicks and Lupe Juarez).  All three signed a release of claims and agreed to the filing of dismissals in this action.

UMF 35: All six discharged business agents have agreed to dismissal of the Third Claim for Relief alleging violation of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 411 *et seq*.

2.   LOCAL 948'S STATEMENT OF UNDISPUTED FACTS.

In moving for summary judgment, Local 948 sets forth the following facts as undisputed.  NABR accept these facts as undisputed except where noted and discussed in this Memorandum Decision.

UMF 1: NABR is a labor organization.

UMF 2: Local 948 is an employer.

UMF 3: NABR and Local 948 were parties to a written CBA, which expired on June 30, 2006.

UMF 4: The CBA contained a specific procedure for resolution of disputes by a federal mediator.

1   NABR disputes this fact, objecting that the characterization
2   is misleading.  NABR asserts that "[t]he CBA contains a procedure
3   at Step 3 for the resolution of disputes with the assistance of a
4   federal mediator mutually selected by the parties, who have
5   decided in advance to accept the mediator's recommendation for
6   resolution of a dispute as final and binding."

7   <u>UMF 5</u>: On or about January 3, 2006, Genevieve Fidalgo and
8   Javier Garcia were terminated.

9   <u>UMF 6</u>: NABR has demanded arbitration pursuant to Step 3 of
10  Section XIII of the CBA.

11  NABR disputes this act, objecting that the characterization
12  of the procedure as "arbitration" is misleading.  NABR does not
13  dispute that it demanded processing of the grievances through
14  Step 3.

15  <u>UMF 6</u>: A mediator from the Federal Mediation Service may not
16  issue a final and binding decision in arbitration.

17  NABR disputes this action, objecting that Local 948's
18  characterization is misleading.  NABR asserts:

19          Step 3 of the grievance procedure of the CBA
            does not require a federal mediator to
20          arbitrate the dispute but only to issue a
            recommendation that the parties have agreed
21          in advance to accept as final and binding.
            Under the FMCS regulations, a mediator is
22          alleged to issue advisory opinions.  The
            impact of the FMCS regulations, if any, on
23          the Step 3 process of the grievance procedure
            in the CBA presents a question of law.
24
    <u>UMF 7</u>: NABR has never requested that the dispute be
25
    submitted to the Federal Mediation Conciliation Service for
26

mediation rather than arbitration.

NABR disputes this fact, objecting that Local 948's characterization is misleading.  NABR further contends that "there is no requirement in the CBA for NABR to request non-binding mediation, only to proceed with Step 3 which provides for a final and binding resolution.

C.   <u>MERITS OF MOTIONS</u>.

The 2002-2006 CBA contains provisions in Section XIII, page 2, entitled "Adjustment of Grievances", for a three step grievance procedure to resolve "[A]ll disputes of any kind involving the interpretation or application of the terms of this Agreement ...."  At Step 3, if a grievance has not been settled through the prior Steps, the parties agreed in the CBA as follows:

> STEP 3
>
> If a grievance is referred to Step 3, the two parties shall request a State Mediator mutually agreeable to both parties to hear the grievance.  The decision of the State Mediator shall be final and binding on the Employee and both parties.  Any expenses incurred by the State Mediator shall be split by both parties except that each party shall bear the expense of preparing and presenting its own case.

NABR and Local 948 agree that the reference in Step 3 to "State Mediator" should be to "Federal Mediator."

Local 948 argues that the grievance resolution procedure cannot be implemented as written and that the Court cannot force it into either a dispute resolution procedure in which Federal

Mediators cannot participate or an arbitration procedure it has not agreed to.

Local 948 asserts that the only source for Federal Mediators is the Federal Mediation and Conciliation Service (FMCS). *See* **29 C.F.R. § 1425.** The parties can request grievance mediation but "[r]eceipt of such request does not commit FMCS to provide its services." **29 C.F.R. § 1425.2(c).** "FMCS has the discretion to determine whether or not to perform grievance mediation, as such service may not be appropriate in all cases." *Id.* The guidelines for FMCS grievance mediation are set forth in Section 1425.d and provide in pertinent part:

> (1) The parties shall submit a joint request, signed by both parties requesting FMCS assistance. The parties agree that grievance mediation is a supplement to, and not a substitute for, the steps of the contractual grievance process.
>
> ...
>
> (6) The mediator had [sic] no authority to compel resolution of the grievance.
>
> ...
>
> (8) If either party does not accept an advisory opinion, the matter may then proceed to arbitration in the manner form [sic] provided in their collective bargaining agreement. Such arbitration hearings will be held as if the grievance mediation effort had not taken place. Nothing said or done by the parties or the mediator during the grievance mediation session can be used during proceedings.
>
> (9) When the parties choose the FMCS grievance mediation procedure, they have agreed to abide by these guidelines established by FMCS, and it is understood

17

1
2
3

> that the parties and the grievant shall hold
> the FMCS and the mediator appointed by the
> Service to conduct the mediation conference
> harmless of any claim of damages arising from
> the mediation process.

4  Local 948 also refers to a letter dated January 24, 2007 to its

5  counsel, David Rosenfeld, from the FOIA Officer for FMCS:

6
7
8
9
10
11
12
13
14
15
16

> FMCS provides mediation and other conflict
> resolution services and programs to companies
> and their unionized employees aimed at
> preventing or minimizing conflicts in the
> collective bargaining process.  The mediator
> does not impose a settlement.  The mediator's
> role is to provide an effective approach and
> to facilitate a dialogue that will help the
> parties develop solutions for their
> particular situations.  The mediator has an
> equal and balanced responsibility to assist
> each party and cannot favor the interests of
> one side over the other.  The parties are
> encouraged to work together to solve their
> dispute and to reach the best possible
> settlement.
>
> Consistent with the above, mediators do not
> participate in any binding arbitration or
> issue final and binding decisions in any
> matters in which they re [sic] involved ....

17       Local 948 acknowledges that the services of a Federal

18  Mediator have been used by Local 948 and NABR in the past.

19  However, Local 948 contends, there is no evidence that the

20  Federal Mediator was aware of any such agreement and participated

21  knowing that the decision would be final and binding.  In

22  addition, Local 948 argues, the fact that Local 948 and NABR have

23  voluntarily agreed to make the decision of the Federal Mediator

24  final and binding, "does not mean that either party can now

25  compel something which FCMS cannot do by its own regulations and

26  authority".  Local 948 contends that the parties can accept,

modify, reject or otherwise utilize a recommendation of the
federal mediator but that the Court "cannot compel the parties to
accept as final and binding that decision when the regulations
prohibit the FMCS from participating in that kind of procedure
and substituting for arbitration."

Local 948 cites *District Council No. 16 of Intern. Union of
Painters & Allied Trades, Glaziers, Architectural Metal & Glass
Workers, Local 1621 v. B & B Glass, Inc.,* ___ F.3d ___, 2007 WL
2325125 (9th Cir.2007), as holding that a Court should not compel
arbitration where the clause relied upon would be unlawful as
enforced.

In *B & B Glass,* a California labor union filed suit against
a Texas corporation, seeking to compel arbitration of the union's
claim that an Arizona corporation that hired nonunion
construction workers in California violated the CBA between the
Texas corporation, that was not doing work in California, and the
Texas local labor union, as the counterpart of the California
labor union, since the owners of the Texas corporation were
majority shareholders of the Arizona corporation.  The District
Court granted the Texas corporation's motion to dismiss for lack
of personal jurisdiction.  The Ninth Circuit stated:

> This construction industry labor litigation
> involves the interplay between the use of
> standard 'work preservation' and 'out-of-
> area' clauses in collective bargaining
> agreements and the strong federal policy
> favoring arbitration.  The clauses at issue
> in this litigation appear in a collective
> bargaining agreement signed by a Texas
> corporation, but a different company in

> California performed the challenged work.
> The California union seeking arbitration did
> not sign an agreement with the company doing
> the work.  We conclude, as did the district
> court, that because the plaintiff union has
> no agreement with the employer that it seeks
> to take to arbitration, and it cannot show
> that the employer against whom it filed its
> claims controls the company doing the work in
> California, the employer is entitled to
> judgment.  We affirm.

There is nothing in *B & B Glass* that supports Local 948's position in this action.

NABR argues that it is entitled to summary judgment.  NABR contends that this dispute "falls squarely within the rationale of the *Steelworkers' Trilogy*, which established the primacy of grievance arbitration."  NABR cites *McKinstry Co. v. Sheet Metal Workers' Intern. Ass'n,* 859 F.2d 1382, 1384 (9th Cir.1988):

> '[A]rbitration is a matter of contract and a
> party cannot be required to submit to
> arbitration any dispute which he has not
> agreed to so submit.  *United Steelworkers v.
> Warrior & Gulf Navigation Co.*, 363 U.S. 574,
> 582 ... (1960).  Where the contract contains
> an arbitration clause, there is a presumption
> of arbitrability.  In other words, a
> grievance will be presumed arbitrable 'unless
> it may be said with positive assurance that
> the arbitration clause is not susceptible of
> an interpretation that covers the asserted
> dispute.  Doubts should be resolved in favor
> of coverage.'  *Warrior & Gulf*, 363 U.S. at
> 582-83 ....

NABR argues that Local 948 must be ordered to arbitrate the remaining grievances because it cannot be said with "positive assurance" that the language of Step 3 of the grievance procedure ... is not susceptible of an interpretation that covers this dispute; in fact, it can be said with "positive assurance" that

the language does cover this dispute and that its meaning is abundantly clear."  NABR further contends that, if there is any doubt about the meaning of Step 3, it is for the arbitrator, rather than the Court, to resolve.

In opposing Local 948's motion, NABR refers to Local 948's position as "tortured".  NABR contends that the issue before the Court is not whether an FCMS mediator can conduct an "arbitration" and impose a binding decision:

> The issue is simply whether Local 948 is contractually obligated to honor the grievance procedure that it agreed to with NABR in the CBA, which does not call for a federal mediator to 'arbitrate' the grievance; the language of Section XIII is clear that Step 3 of the grievance procedure requires the parties to agree to select a mediator, to submit the dispute to the mediator, and agree to accept the recommendation of the mediator as final and binding.  While that procedure is not 'arbitration' in the formal sense of the word, it is the final step in the grievance procedure and Local 948 is bound to follow it; this Court can and should compel Local 948 to do so.

NABR cites the definition of "arbitration" in Elkouri & Elkouri, *How Arbitration Works*, 5th Ed., Chapter 1, page 2: "a simple proceeding voluntarily chosen by the parties who want a dispute determined by an impartial judge of their own mutual selection, whose decision, based on the merits of the case, they agree in advance to accept as final and binding."   NABR contends that Section XIII of the CBA meets this definition and asserts:

> In no way does the procedure run afoul of the regulations of the ... FMCS ... since the federal mediator selected by the parties does

21

1
2

> nothing more than issue a recommendation in
> the nature of an 'advisory' opinion which the
> parties have agreed in advance to accept.

3   NABR cites *General Drivers, Warehousemen and Helpers, Local ...*,

4   372 U.S. 517, 519 (1963)(District Court had jurisdiction under

5   Labor Management Relations Act to enforce committee's award if

6   award was under the CBA final and binding, notwithstanding that

7   the word "arbitration" did not appear in the CBA); *see also*

8   *United Steelworkers of America v. American Mfg. Co.,* 363 U.S.

9   564, 566 (1960):

10
11
12
13
14
15
16

> Section 203(d) of the Labor Management
> Relations Act ... states, 'Final adjustment
> by a method agreed upon by the parties is
> hereby declared to be the desirable method
> for settlement of grievance disputes arising
> over the application or interpretation of an
> existing collective bargaining agreement
> ....'   That policy can be effectuated only if
> the means chosen by the parties for
> settlement of their differences under a
> collective bargaining agreement is given full
> play.

17   NABR contends that it has never suggested that the federal

18   mediator whom the parties have agreed to select should act as an

19   arbitrator, asserting that "that spin has been developed by Local

20   948 solely in an attempt to undercut NABR's claims."   NABR argues

21   that the FMCS procedures governing grievance mediation are very

22   similar to those set forth in the CBA and that the only

23   difference is that NABR and Local 948 have agreed in advance to

24   accept the "advisory opinion" of the mediator as final and

25   binding.   NABR contends:

26

> Accordingly, the federal mediator is not
> asked to do anything he/she may not do under

1
2
3

> the FMCS policies or regulations; Local 948's
> protests are disingenuous, particularly since
> it is currently using the same procedures in
> its industry contracts.

4   Local 948 does not dispute that this provision is in other

5   CBA's between it and other employers and that this provision has

6   been implemented by it in the past.  To now say that the

7   provision is unenforceable because of the federal regulations,

8   thereby precluding a discharged employee of *Local 948* from the

9   benefit of the CBA is outrageous.  The Union is assuming that

10  FMCS will not participate, but it has not yet been asked to do

11  so.  FMCS has in the past.  There is no law of which the Court is

12  aware that the parties cannot contractually agree in advance to

13  be bound by the Federal Mediator's decision.  This does not

14  compromise the FMCS rules as subsequent acceptance and

15  enforcement of the finality of the decision pursuant to contract

16  by the parties is not outside of FMCS authority and jurisdiction.

17      NABR also contends that it is entitled to summary judgment

18  on its claim that Local 948 breached the CBA by failing to comply

19  with the grievance procedures set forth in the CBA.

20      Local 948 responds that NABR is not entitled to summary

21  judgment on this claim because the "FAC cannot be read to state a

22  contract claim separate and apart from NABR's stated efforts to

23  compel arbitration and its allegation that Local 948 has breached

24  the agreement by refusing to arbitrate claims."  Because, Local

25  948 argues, the FMCS refuses to participate in final and binding

26  arbitration, Local 948 has not breached the CBA.

23

1    For the reasons discussed above, Local 948's position is

2  without merit.[2]

### CONCLUSION

4    For the reasons stated above:

5    1.   The motion for summary judgment filed by National

6  Association of Business Representatives (NABR), Jim Hicks,

7  Genevieve Fidalgo, Javier Garcia, Lupe Juarez, Ralph Ramirez, and

8  Jack Smith (Grievants) is GRANTED;

9    2.   The motion for summary judgment filed by Teamsters Local

10  Union # 948 is DENIED;

11    3.   Counsel for NABR and the Grievants shall prepare and

12  lodge a form of order consistent with this decision within five

13  (5) days following the date of service of this decision.

14    IT IS SO ORDERED.

15  Dated:    October 3, 2007                   /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE

---

[2]**The rulings herein make it unnecessary to resolve the parties' respective positions concerning the ability of NABR and the Grievants' to have this court enforce the rights of the Grievants when there is no provision for arbitration in the CBA or the arbitration provision has been repudiated by the employer.** *See* **29 U.S.C. § 185.**